**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVIDSON PARKING, INC.,<br><br>Plaintiff,<br><br>v.<br><br>LINCOLN COUNTY, JOSEPH KAIMANN, in his official and individual capacity, MIKE MUELLER, in his official and individual capacity, and MATT BASS, in his official and individual capacity,<br><br>**Serve: Lincoln County, Joseph Kaimann, Mike Mueller and Matt Bass at 201 Main Street Troy, MO 63379**<br><br>Defendants. | ) | Case No.:<br><br>**JURY TRIAL DEMANDED** |

**<u>COMPLAINT FOR DAMAGES</u>**

COMES NOW Plaintiff Davidson Parking, Inc. ("Davidson"), by and through counsel, and for its Complaint for Damages against Defendants Lincoln County, Missouri ("County"), Joseph Kaimann, Mike Mueller, and Matt Bass (collectively, "Commissioners"; County and Commissioners collectively referred to as "Defendants"), states as follows:

**INTRODUCTION**

1. This case concerns Defendants' unlawful, targeted, arbitrary, and pretextual use of governmental power to destroy Davidson's existing vehicle parking and storage business by extending a purported 28 ton weight restriction beyond the area of any claimed road maintenance, repair, curve related or safety concern by including the segment of Linn's Mill Road between Trackside Farm Road and Fieth Road that is necessary for vehicle carrier ingress and egress to Davidson's business premises.

2. Davidson operates a vehicle parking and storage business on its premises located at 484 Linn's Mill Road, Troy, Missouri (the "Lot").

3. Davidson does not waive, abandon, or limit its claim that Ordinance 20260414 (the "Ordinance") and its 28 ton restriction as a whole are unlawful, unauthorized, arbitrary, pretextual, and unsupported by the statutory prerequisites required under Missouri law. However, even if some weight restriction could have lawfully been considered for the portion of Linn's Mill Road north of Trackside Farm Road, Defendants' inclusion of the segment between Trackside Farm Road and Fieth Road was independently unlawful, arbitrary, unreasonable, and causally responsible for Davidson's damages.

4. Defendants' implementation of the Ordinance and extension of the Ordinance's restriction south of the Trackside Farm Road intersection to the Fieth Road intersection, thereby including the vehicle access segment for Davidson's Lot within the restriction, were wrongful acts.

5. The Lot is located on Linn's Mill Road between the Trackside Farm Road intersection and the Fieth Road intersection. An aerial photograph of the Lot is attached hereto as **Exhibit 1** and incorporated herein.

6. The maintenance, repair, curve, and related safety concerns asserted by Defendants are located on Linn's Mill Road north of its intersection with Trackside Farm Road.

7. If the Ordinance had applied only to Linn's Mill Road from Highway 47 south to the Trackside Farm Road intersection and had not extended south of Trackside Farm Road to Fieth Road, vehicle carriers could have continued to access the Lot.

8. By extending the Ordinance south of Trackside Farm Road to Fieth Road, Defendants included the entire and only Lot access segment within the 28 ton restriction, eliminating vehicle carrier access to the Lot, causing Davidson to lose vehicle parking and storage business and damaging Davidson's business.

9. Davidson contracts with vehicle carrier Jack Cooper Transport Company, LLC, AWCT, Inc., and/or their assignees and agents (the "Carrier" or "Carriers") for vehicle parking and storage at the Lot.

10. The Carrier transports vehicles for General Motors ("GM") to and from the Lot.

11. Defendants requested that Davidson pay for or contribute to public road repairs, maintenance, improvements, or modifications to Linn's Mill Road. Davidson refused to do so. Those requested repairs, maintenance, improvements, or modifications did not concern the Trackside to Fieth access segment later included within the Ordinance.

12. Defendants' purpose was not to adopt a neutral, lawful, engineering based road restriction ordinance addressing the actual road maintenance, repair, curve related or safety concerns on Linn's Mill Road north of Trackside Farm Road.

13. Instead, Defendants extended the restriction south of Trackside Farm Road to Fieth Road to stop Carrier traffic from accessing the Lot, to punish or coerce Davidson for refusing to pay public road costs, and to shut down Davidson's business operations.

14. Defendants' actions caused Carrier, GM related vehicle traffic, and/or GM vehicle parking operations to be terminated, withdrawn, and discontinued at the Lot.

15. As a direct and proximate result of Defendants' conduct, Davidson lost revenue and profits, lost goodwill, suffered damage to business relationships and business value, lost the benefit of its substantial investment, and sustained damages in an amount to be proven at trial.

**PARTIES**

16. Plaintiff Davidson Parking, Inc. is a Missouri corporation in good standing with its principal place of business in St. Louis County, Missouri. Davidson operates a vehicle parking and storage business in Lincoln County, Missouri.

17. At all relevant times, Davidson leased, controlled, possessed, operated, and/or held rights concerning the Lot and the vehicle parking and storage operations conducted at the Lot.

18. Defendant Lincoln County, Missouri is a political subdivision of the State of Missouri.

19. At all relevant times, Lincoln County acted under color of state law through its officials, policymakers, agents, and employees.

20. Defendant Joseph Kaimann is the Presiding Commissioner of Lincoln County, Missouri and is sued in his individual and official capacities.

21. Defendant Mike Mueller is an Associate Commissioner of Lincoln County, Missouri and is sued in his individual and official capacities.

22. Defendant Matt Bass is an Associate Commissioner of Lincoln County, Missouri and is sued in his individual and official capacities.

23. At all relevant times, the Commissioners acted under color of state law.

24. At all relevant times, the Commissioners acted as final policymakers for Lincoln County with respect to the challenged county road decision, Ordinance, weight restriction, posting, enforcement, and related County action.

25. The Commissioners' acts, votes, orders, decisions, policies, and directives constituted official action and policy of Lincoln County.

26. Davidson's claims against the Commissioners in their individual capacities are based on the Commissioners' personal participation in non-legislative, administrative, executive, enforcement related, coercive, and/or extra legislative conduct, including demands that Davidson pay public road costs, selection or direction of the overbroad geographic scope, causing or directing posting and maintenance of the restriction, causing or directing threatened enforcement, and actions intended to cause Carrier and GM related vehicle traffic to stop accessing the Lot.

## JURISDICTION AND VENUE

27. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Davidson asserts claims arising under the United States Constitution and 42 U.S.C. § 1983.

28. This Court has civil rights jurisdiction under 28 U.S.C. § 1343 because Davidson seeks redress for the deprivation, under color of state law, of rights secured by the United States Constitution.

29. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Davidson's related Missouri law claims because those claims arise from the same facts, events, conduct, Ordinance, restriction, business loss, and damages, and form part of the same case or controversy.

30. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants reside in this District, the events or omissions giving rise to Davidson's claims occurred in this District, and the property and business affected by Defendants' conduct are located in this District.

## FACTUAL ALLEGATIONS

31. In July 2023, Davidson leased, obtained rights to, and/or commenced preparations to operate vehicle parking and storage operations at real property known and numbered as 484 Linn's Mill Road, Troy, Missouri, for the purpose of parking and storing GM vehicles.

32. Davidson invested substantial resources to establish, improve, secure, and operate a vehicle parking and storage business at the Lot to park and store GM vehicles.

33. The Lot is approximately 160 acres and uses approximately 84 acres for vehicle parking and storage.

34. The Lot is located approximately 1.7 miles south of Highway 47 and on Linn's Mill Road between the Trackside Farm Road intersection and the Fieth Road intersection.

35. The Lot consists of a compacted subgrade, crushed stone base, and smaller aggregate gravel finish layer designed to ensure proper drainage, prevent sinking, and support vehicle loads.

36. The Lot is surrounded by a ten foot security fence, has two gates facing Linn's Mill Road, includes an office structure, and can park up to approximately 15,000 vehicles.

37. The Lot employs approximately 12 persons.

38. Davidson contracts with Carrier who transports vehicles for GM to and from the Lot where Davidson parks and stores vehicles.

39. Davidson's business operations require access to and from the Lot by Carrier over Linn's Mill Road.

40. Carrier can only access the Lot by traveling over Linn's Mill Road between the Trackside Farm Road intersection and the Fieth Road intersection.

41. Without Carrier access over Linn's Mill Road between the Trackside Farm Road intersection and the Fieth Road intersection, GM vehicles could not be delivered to or removed from the Lot in the course of Davidson's business.

42. Linn's Mill Road is a public, two lane county road maintained by or under the authority of Lincoln County and/or the Lincoln County Highway Department.

43. Prior to June 1, 2026, there was no posted weight limit restriction on Linn's Mill Road.

44. For a period of more than 20 years before Davidson leased or operated the Lot, vehicles regularly traveled over Linn's Mill Road weighing in excess of 28 tons.

45. Upon information and belief, from at least 2004, and likely going back to the 1990s, dump trucks and other vehicles routinely carried between 35 to 40 ton loads over Linn's Mill Road.

46. At or around January 2024, Davidson commenced business operations at the Lot.

47. At the time Davidson commenced business operations, the condition of Linn's Mill Road was poor and in need of repair and maintenance.

48. In 2025, Defendants approached Davidson about the condition of Linn's Mill Road and requested that Davidson contribute to repair and maintenance and/or pay to have the roadway straightened.

49. Davidson declined to pay for Linn's Mill Road repairs and maintenance or to have the roadway straightened.

50. Upon information and belief, the County spent between approximately $50,000 and $75,000 to make repairs to Linn's Mill Road.

51. Defendants requested that Davidson participate in the payment of the Linn's Mill Road repair costs and Davidson declined to do so.

52. Defendants expressed their displeasure with Davidson because Davidson declined to cooperate or contribute to Linn's Mill Road repair and maintenance costs, declined to pay to have the roadway straightened, and/or declined to participate in the payment of Linn's Mill Road repair costs.

53. Defendants discussed, considered, and/or acted to stop Davidson's Carrier traffic after Davidson refused to cooperate in, pay, or contribute to public road costs.

54. Defendants' purpose was not merely to protect Linn's Mill Road through a lawful, neutral, engineering based process, but to stop Carriers' ability to access Davidson's Lot because of Davidson's refusal to cooperate or pay public road costs.

55. On April 16, 2026, Defendants passed the Ordinance which enacted a weight limit restriction on Linn's Mill Road between Highway 47 and Fieth Road, effective June 1, 2026 (the "Ordinance").

56. A copy of the Ordinance is attached hereto as **Exhibit 2** and incorporated herein.

57. On or about June 1, 2026, Defendants posted or caused to be posted a sign on Linn's Mill Road displaying a "28 Tons" weight limit and expressly citing RSMo § 304.220 as authority for the restriction.

58. A photograph of the weight limit sign is attached hereto as **<u>Exhibit 3</u>** and incorporated herein.

59. The Ordinance included both the area north of the Trackside Farm Road intersection, and the separate segment south of the Trackside Farm Road intersection to the Fieth Road intersection where Carrier has its only access to the Lot.

**THE WRONGFUL TRACKSIDE TO FIETH EXTENSION**

60. The road maintenance, repair, curve, and related safety concerns asserted by Defendants are all located on Linn's Mill Road north of the Trackside Farm Road intersection.

61. Davidson's Lot is located south of the Trackside Farm Road intersection, on Linn's Mill Road between the Trackside Farm Road intersection and the Fieth Road intersection.

62. The Linn's Mill Road segment between the Trackside Farm Road intersection and the Fieth Road intersection provides the only vehicle ingress and egress to the Lot.

63. If the Ordinance had stopped at or near the northern point of the Trackside Farm Road intersection, Carriers could have accessed the Lot.

64. By extending the Ordinance south of the Trackside Farm Road intersection to the Fieth Road intersection, Defendants included the Lot access segment of Linn's Mill Road within the 28 ton restriction.

65. The inclusion of the Linn's Mill Road segment between the Trackside Farm Road intersection and the Fieth Road intersection was not necessary to address the purported road maintenance, repair, curve, or related safety concerns north of the Trackside Farm Road intersection.

66. The inclusion of the Trackside to Fieth segment did not preserve, repair, protect, or address the location of the asserted road maintenance, repair, curve or related safety concerns.

67. The practical and intended effect of including the Trackside to Fieth segment was to prohibit Carrier from accessing the Lot.

68. The inclusion of the Trackside to Fieth segment bears no substantial or reasonable relationship to Defendants' safety, maintenance, infrastructure, or road preservation concerns.

69. The inclusion of the Trackside to Fieth segment instead evidences Defendants' actual purpose to target Davidson, shut down the Lot, and punish or coerce Davidson after it refused to cooperate or pay public road repairs.

70. But for Defendants' inclusion of the Linn's Mill Road segment between the Trackside Farm Road intersection and the Fieth Road intersection in the Ordinance, Carrier could have continued accessing the Lot and Davidson would not have lost the vehicle parking and storage business at issue.

## STATUTORY AND ENGINEERING DEFECTS

71. Independent of the Trackside to Fieth extension, Davidson also alleges that the Ordinance and the 28 ton restriction as a whole were unlawful, unauthorized, arbitrary, pretextual, and invalid because Defendants failed to comply with RSMo § 304.220, failed to obtain the required MoDOT division engineer approval, failed to obtain or rely on a neutral engineering basis, and selected the 28 ton restriction to target Davidson rather than to address a neutral road preservation or safety concern.

72. Missouri law does not authorize Defendants to arbitrarily post a weight limit sign to single out, punish, coerce, or terminate a particular business operation.

73. RSMo § 304.220 authorizes reduced county road weight limits only under specific circumstances and following specific procedures.

74. RSMo § 304.220 requires a finding by the county highway engineer, or other properly designated officer if the county has no county highway engineer, that the county road or bridge is in such condition that use by vehicles of otherwise lawful weight would endanger the road or bridge, or the users thereof.

75. RSMo § 304.220 further requires approval of the division engineer of the Missouri Department of Transportation whose division includes the area in question.

76. RSMo § 304.220 authorizes the establishment of a maximum weight limit only in amounts necessary to preserve the road and provide a reasonable margin of safety to users.

77. Upon information and belief, no county highway engineer made the finding required by RSMo § 304.220.

78. Upon information and belief, if the County has no county highway engineer, no officer was lawfully designated by the Commission and no such officer made the finding required by RSMo § 304.220.

79. Upon information and belief, the applicable MoDOT division engineer did not approve the 28 ton restriction.

80. Upon information and belief, Defendants did not obtain MoDOT division engineer approval before posting, adopting, threatening, or enforcing the 28 ton restriction.

81. Upon information and belief, Defendants did not obtain or rely upon a pavement study, engineering report, load rating analysis, traffic count analysis, or other neutral engineering determination supporting a 28 ton limit.

82. Upon information and belief, Defendants did not obtain or rely upon any neutral engineering determination supporting the extension of the 28 ton restriction south of the Trackside Farm Road intersection to the Fieth Road intersection.

83. Upon information and belief, Defendants did not analyze whether a different, narrower, temporary, seasonal, route specific, axle specific, or permit based restriction would

address any road maintenance, repair, curve or related safety concern north of Trackside Farm Road on Linn's Mill Road without destroying Davidson's business.

84. Upon information and belief, Defendants did not consider whether lawful repair, maintenance, bonding, permitting, reimbursement, or road use alternatives could address any alleged road maintenance, repair, curve or related safety concern without eliminating Carrier access to the Lot.

85. To the extent Defendants contend they acted under RSMo § 304.010, Defendants failed to comply with the requirements applicable to county commission weight limit orders, including lawful order, required transmittals, proper marking, and uniform MoDOT compliant signage.

**DIFFERENTIAL TREATMENT, NON-LEGISLATIVE CONDUCT, CAUSATION, AND DAMAGES**

86. Upon information and belief, Defendants did not impose the same or similar targeted restrictions on similarly situated businesses, road users, property owners, or other commercial traffic on comparable county roads.

87. Upon information and belief, other heavy vehicle commercial operations, including quarry, agricultural, construction, industrial, utility, delivery, waste, and government vehicle operations, have used, continue to use, or are permitted to use county maintained roads without restrictions drawn to eliminate access to a single identified business.

88. Those other users and businesses are similarly situated in material respects because they operate heavy vehicles over county maintained roads that cause or may cause wear, tear, maintenance concerns, repair concerns, or safety concerns, but they were not subjected to a restriction geographically extended beyond the asserted problem area to cut off access to their property or business.

89. Upon information and belief, Defendants singled out Davidson for different treatment because Davidson refused to cooperate or pay or contribute to public road repair, maintenance, or modification costs.

90. The individual Commissioners are not sued in their individual capacities merely because they voted for the Ordinance.

91. The individual Commissioners are sued in their individual capacities for non-legislative, administrative, executive, enforcement related, coercive, and/or extra legislative conduct, including demanding that Davidson pay public road costs, pressuring Davidson to fund road work, selecting or directing the overbroad Trackside to Fieth geographic scope, causing or directing the sign to be posted and maintained, causing or directing threatened enforcement, communicating or causing communications with Carrier, GM related representatives, or third parties, and using County authority to cause Carrier and GM related vehicle traffic to stop accessing the Lot.

92. The challenged restriction harmed Davidson immediately.

93. Davidson's customers, Carrier, drivers, and/or business invitees refused and cancelled access to the Lot because of the weight limit restriction and threat of enforcement.

94. Defendants knew or reasonably should have known that imposing the 28 ton restriction on the segment between Trackside Farm Road and Fieth Road would prevent Carrier from accessing the Lot.

95. Defendants knew or reasonably should have known that preventing Carrier access to the Lot would cause vehicle parking and storage operations at the Lot to be suspended, terminated, withdrawn, or discontinued.

96. Defendants knew or reasonably should have known that the loss of Carrier access and GM related vehicle parking operations would cause Davidson substantial economic harm.

97. After the Ordinance was enacted, posted, threatened, and/or enforced, Carrier, GM related vehicle traffic, and/or GM vehicle parking operations were terminated, withdrawn, and discontinued at the Lot.

98. The loss of business was the direct, natural, probable, and foreseeable result of Defendants' inclusion of the Lot access segment between Trackside Farm Road and Fieth Road.

99. The damages sought in this case are not based on a request to enjoin prospective enforcement of the Ordinance. Davidson seeks damages for the completed loss of business caused by Defendants' unlawful Ordinance and, independently, by Defendants' inclusion of the Trackside to Fieth Lot access segment within the 28 ton restriction.

100. The weight limit restriction on Linn's Mill Road between the Trackside Farm Road intersection and Fieth Road caused Davidson loss of customers, loss of goodwill, loss of business reputation, disruption of business operations, loss of revenue, lost profits, damage to business value, and destruction of its business.

101. Davidson attempted to mitigate its losses, including by proposing use of a separate Bedrock Quarry facility for GM related vehicle parking.

102. The lost Lot business was not replaced or restored through Bedrock because of concerns arising from the Linn's Mill Road dispute and Defendants' conduct.

103. Defendants acted under color of state law.

104. The challenged restriction was adopted, posted, maintained, threatened, and/or enforced pursuant to official County action, official County policy, final policymaker decision, and/or acts of officials whose edicts and decisions fairly represent official policy of the County.

105. Upon information and belief, County has purchased, maintained, participated in, and/or is covered by one or more liability insurance policies, self-insurance plans, risk management plans, public entity risk pools, or other coverage arrangements applicable to one or more of the state law claims asserted herein. To the extent sovereign immunity would otherwise

apply to any state law tort claim asserted against County, Davidson pleads that County has waived sovereign immunity under RSMo § 537.610 to the maximum amount and for the purposes covered by any applicable insurance policy, self-insurance plan, risk management plan, public entity risk pool, or other coverage arrangement. Davidson further pleads this waiver in the alternative and reserves the right to amend these allegations after discovery of County's insurance, self-insurance, risk management, indemnity, and coverage materials.

106. To the extent Defendants contend that official immunity, public duty immunity, sovereign immunity, statutory immunity, indemnity limitations, or any insurance related limitation applies to Davidson's state law claims against the individual Commissioners, Davidson pleads in the alternative that the Commissioners acted in bad faith, with malice, with improper purpose, and outside the protection of any discretionary function immunity by engaging in non-legislative, administrative, coercive, enforcement related, and extra legislative conduct intended to interfere with Davidson's GM related business and Lot access.

107. At all times relevant herein, Defendants acted intentionally, knowingly, willfully, wantonly, recklessly, maliciously, in bad faith, and/or with improper purpose.

108. Davidson does not seek punitive damages against County or against any of the Commissioners in their official capacity. Davidson seeks punitive damages only against the individual Commissioners in their individual capacities and only to the extent permitted by law. The individual Commissioners' conduct was intentional, malicious, willful, wanton, in bad faith, and/or undertaken with reckless or callous indifference to Davidson's federally protected rights, including Davidson's rights to equal protection, due process, and just compensation.

109. Davidson seeks punitive damages against the individual Commissioners on its state law tort claims only to the extent permitted by law. The individual Commissioners' conduct was intentional, malicious, willful, wanton, outrageous, in bad faith, and undertaken with

improper purpose, including the purpose of punishing Davidson for refusing to cooperate in or fund public road repairs and/or interfering with Davidson's GM related business relationship.

**COUNT I**
**42 U.S.C. § 1983 - EQUAL PROTECTION/CLASS OF ONE**

COMES NOW Plaintiff, by and through counsel, and for Count I of the Complaint against Defendants states to the Court as follows:

110. Davidson realleges and incorporates all paragraphs and averments in this Complaint as if fully set forth herein.

111. The Equal Protection Clause of the Fourteenth Amendment prohibits intentional and arbitrary government discrimination, including intentional differential treatment of a class of one without a rational basis.

112. Davidson was intentionally treated differently from similarly situated road users, property owners, and businesses.

113. Defendants targeted Davidson, Davidson's business, and Davidson's property by adopting, posting, threatening, maintaining, and/or enforcing the 28 ton restriction on the Trackside to Fieth segment for the purpose of stopping Carrier from accessing Davidson's Lot.

114. Defendants did not impose the same or similar restrictions on similarly situated businesses, road users, property owners, or heavy vehicle traffic on comparable county maintained roads, including quarry, agricultural, construction, industrial, utility, delivery, waste, and government vehicle operations that used or affected public roads without having access to their businesses cut off by an overbroad restriction.

115. Defendants' differential treatment of Davidson was intentional, irrational, arbitrary, pretextual, malicious, and without a rational basis.

116. Defendants' asserted road preservation rationale was pretextual because the stated road maintenance, repair, curve and related safety concerns were north of Trackside Farm Road,

but Defendants extended the 28 ton restriction south of Trackside Farm Road to Fieth Road, thereby including the Lot access segment and eliminating Carrier access to the Lot.

117. Defendants' asserted road preservation rationale was further pretextual because Defendants failed to comply with the engineering and MoDOT approval procedures required by RSMo § 304.220, failed to base the restriction on neutral engineering judgment, and failed to identify a neutral safety basis for including the Trackside to Fieth segment.

118. Defendants' conduct deprived Davidson of equal protection of the laws.

119. Lincoln County is liable because the challenged conduct was taken pursuant to official policy, official decision, final policymaker action, and/or custom.

120. The individual Commissioners are liable because they personally participated in, directed, caused, maintained, threatened, implemented, and/or enforced the challenged conduct through non-legislative, administrative, executive, enforcement related, coercive, and/or extra legislative acts identified herein, not merely because they voted for the Ordinance.

121. As a direct and proximate result of Defendants' conduct, Davidson lost vehicle parking and storage business, revenue, profits, goodwill, business reputation, customer relationships, business opportunities, business value, and other damages in an amount to be proven at trial.

122. Davidson is entitled to compensatory damages, nominal damages, punitive damages against individual capacity Defendants where allowed by law, attorney's fees, costs, and all other relief allowed under 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Davidson prays that the Court enter its order and judgment on Count I in favor of Davidson and against Defendants, jointly and severally where permitted by law, awarding Davidson compensatory damages, nominal damages, punitive damages against the individual capacity Defendants only and only to the extent permitted by law, reasonable attorney's fees and costs under 42 U.S.C. §§ 1983 and 1988, pre-judgment and post-judgment

interest where allowed by law, and such other and further relief as the Court deems just and proper, all in an amount to be proven at trial.

**COUNT II**
**42 U.S.C. § 1983 - SUBSTANTIVE DUE PROCESS**

COMES NOW Plaintiff, by and through counsel, and for Count II of the Complaint against Defendants states to the Court as follows:

123. Davidson realleges and incorporates all paragraphs and averments in this Complaint as if fully set forth herein.

124. Davidson had protected property and liberty interests in the lawful use of its property, reasonable commercial access to its property, operation of its business, existing business relationships, and freedom from arbitrary government action that destroys lawful business operations without lawful authority.

125. Defendants' conduct was arbitrary, irrational, pretextual, conscience shocking, and an abuse of governmental power.

126. Defendants did not adopt a neutral safety regulation supported by engineering judgment.

127. Defendants used a purported road weight restriction as a targeted tool to punish Davidson, stop Davidson's Carrier traffic, and destroy Davidson's vehicle parking and storage business.

128. Defendants' action bore no rational relationship to a legitimate governmental purpose because the Trackside to Fieth segment was included despite the fact that the asserted road maintenance, repair, curve and related safety concerns were located north of Trackside Farm Road.

129. Defendants' action bore no rational relationship to a legitimate governmental purpose because it was adopted, posted, maintained, threatened, implemented, and/or enforced

without the statutory predicates required by Missouri law, without MoDOT division engineer approval, without neutral engineering support, and with an overbroad geographic scope unrelated to the stated concerns.

130. Defendants' conduct deprived Davidson of substantive due process under the Fourteenth Amendment.

131. County is liable because the challenged conduct was taken pursuant to official policy, official decision, final policymaker action, and/or custom.

132. The individual Commissioners are liable because they personally participated in, directed, caused, maintained, threatened, implemented, and/or enforced the challenged conduct through non-legislative, administrative, executive, enforcement related, coercive, and/or extra legislative acts identified above, not merely because they voted for the Ordinance.

133. As a direct and proximate result of Defendants' conduct, Davidson lost vehicle parking and storage business, revenue, profits, goodwill, business reputation, customer relationships, business opportunities, business value, and other damages in an amount to be proven at trial.

134. Davidson is entitled to compensatory damages, nominal damages, punitive damages against individual capacity Defendants where allowed by law, attorney's fees, costs, and all other relief allowed under 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Davidson prays that the Court enter its order and judgment on Count II in favor of Davidson and against Defendants, jointly and severally where permitted by law, awarding Davidson compensatory damages, nominal damages, punitive damages against the individual capacity Defendants only and only to the extent permitted by law, reasonable attorney's fees and costs under 42 U.S.C. §§ 1983 and 1988, pre-judgment and post-judgment interest where allowed by law, and such other and further relief as the Court deems just and proper, all in an amount to be proven at trial.

**COUNT III**
**42 U.S.C. § 1983 - PROCEDURAL DUE PROCESS**

COMES NOW Plaintiff, by and through counsel, and for Count III of the Complaint against Defendants states to the Court as follows:

135. Davidson realleges and incorporates all paragraphs and averments in this Complaint as if fully set forth herein.

136. Davidson had protected interests in the lawful use of its property, reasonable commercial access to its property, continued operation of its business, existing business relationships, and freedom from deprivation of those interests except through lawful procedures.

137. Missouri law creates mandatory procedures and substantive limitations before a county road weight limit may be reduced under RSMo § 304.220.

138. Those mandatory procedures include a required road safety finding by the county highway engineer or other lawfully designated officer and approval by the applicable MoDOT division engineer.

139. Defendants deprived Davidson of protected interests without constitutionally adequate process.

140. Defendants failed to provide notice reasonably calculated to allow Davidson to be heard before the restriction was adopted, posted, maintained, threatened, implemented, or enforced in a manner that included the Lot access segment and caused the loss of Davidson's business.

141. Defendants failed to provide Davidson a meaningful opportunity to challenge the inclusion of the Trackside to Fieth segment before that inclusion destroyed or substantially impaired Davidson's vehicle parking and storage business.

142. Defendants failed to follow the mandatory procedures required by Missouri law before reducing the weight limit and before including the Trackside to Fieth access segment.

143. Defendants' conduct deprived Davidson of procedural due process under the Fourteenth Amendment.

144. County is liable because the challenged conduct was taken pursuant to official policy, official decision, final policymaker action, and/or custom.

145. The individual Commissioners are liable because they personally participated in, directed, caused, maintained, threatened, implemented, and/or enforced the challenged conduct through non-legislative, administrative, executive, enforcement related, coercive, and/or extra legislative acts identified above, not merely because they voted for the Ordinance.

146. As a direct and proximate result of Defendants' conduct, Davidson lost vehicle parking and storage business, revenue, profits, goodwill, business reputation, customer relationships, business opportunities, business value, and other damages to be proven at trial.

147. Davidson is entitled to compensatory damages, nominal damages, punitive damages against individual capacity Defendants where allowed by law, attorney's fees, costs, and all other relief allowed under 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Davidson prays that the Court enter its order and judgment on Count III in favor of Davidson and against Defendants, jointly and severally where permitted by law, awarding Davidson compensatory damages, nominal damages, punitive damages against the individual capacity Defendants only and only to the extent permitted by law, reasonable attorney's fees and costs under 42 U.S.C. §§ 1983 and 1988, pre-judgment and post-judgment interest where allowed by law, and such other and further relief as the Court deems just and proper, all in an amount to be proven at trial.

## COUNT IV
## 42 U.S.C. § 1983 - TAKING WITHOUT JUST COMPENSATION

COMES NOW Plaintiff, by and through counsel, and for Count IV of the Complaint against County states to the Court as follows:

148. Davidson realleges and incorporates all paragraphs and averments in this Complaint as if fully set forth herein.

149. Davidson has property interests in its leasehold, possessory, use, access, and business operation rights relating to the Lot, including reasonable commercial access to and from the Lot and the value of the Lot as improved and operated for vehicle parking and storage.

150. County's inclusion of the Trackside to Fieth segment within the 28 ton restriction substantially impaired and/or terminated Davidson's reasonable commercial access to and from the Lot.

151. County's inclusion of the Trackside to Fieth segment substantially damaged the use, value, utility, and economic viability of the Lot as a vehicle parking and storage facility.

152. County imposed a public road objective uniquely and disproportionately on Davidson by using a public road restriction to eliminate access necessary to Davidson's existing business.

153. County's conduct took and/or damaged Davidson's property rights and property value for an alleged public use or public purpose without just compensation.

154. Davidson has sustained damages, including loss of use, loss of access, diminution in value, loss of business value, and other damages in an amount to be proven at trial.

155. Davidson is entitled to just compensation, damages, costs, attorney's fees where allowed by law, and all other relief allowed under 42 U.S.C. § 1983.

WHEREFORE, Davidson prays that the Court enter judgment on Count IV in favor of Davidson and against County awarding Davidson just compensation, compensatory damages, nominal damages where allowed by law, costs, reasonable attorney's fees under 42 U.S.C. § 1988 where allowed by law, pre-judgment and post-judgment interest where allowed by law, and such other and further relief as the Court deems just and proper, all in an amount to be proven at trial.

**COUNT V**
**MISSOURI INVERSE CONDEMNATION/TAKING OR DAMAGING PROPERTY**
**ARTICLE I, § 26, MISSOURI CONSTITUTION**

COMES NOW Plaintiff, by and through counsel, and for Count V of the Complaint against County states to the Court as follows:

156. Davidson realleges and incorporates all paragraphs and averments in this Complaint as if fully set forth herein.

157. Davidson has legally protected property interests in and relating to the Lot, including its leasehold, possessory, use, access, improvement, and operational rights.

158. Davidson's protected property interests include the right to reasonable commercial ingress and egress to and from the Lot and reasonable connection from the Lot to the public road system for the Lot's existing and intended use as a vehicle parking and storage facility.

159. Davidson's protected property interests also include the value, utility, and use of the Lot as improved and operated for vehicle parking and storage.

160. At all relevant times, the Lot was improved, developed, and operated as a vehicle parking and storage facility, and Davidson's commercial use of the Lot depended upon vehicle carrier access over Linn's Mill Road.

161. If the 28 ton restriction had stopped at or near the Trackside Farm Road intersection, vehicle carriers could have continued to access the Lot.

162. By including the Linn's Mill Road segment between the Trackside Farm Road intersection and the Fieth Road intersection within the 28 ton restriction, the County included the Lot access segment within the restriction.

163. The County's inclusion of the Trackside Farm Road to Fieth Road segment within the 28 ton restriction substantially impaired, eliminated, and/or destroyed Davidson's reasonable

commercial access to and from the Lot for vehicle carrier traffic necessary to the Lot's existing and intended use.

164. The impairment was not merely a diversion of traffic, inconvenience, circuity of travel, or loss of a preferred route. The inclusion of the Trackside Farm Road to Fieth Road segment eliminated the only practical and lawful commercial vehicle carrier access necessary for Davidson's vehicle parking and storage operations at the Lot.

165. As a direct and natural consequence of the County's conduct, vehicle carriers could not reasonably access the Lot for the delivery, parking, storage, and removal of GM related vehicles.

166. As a direct and natural consequence of the County's conduct, the Lot's use, utility, value, and economic viability as a vehicle parking and storage facility were substantially damaged.

167. The County's conduct caused damage to Davidson's property interests that was direct, substantial, special, and different in kind from any injury suffered by the general public.

168. The County acted for an alleged public use, public purpose, or public benefit, including purported road preservation, infrastructure protection, traffic regulation, and/or public safety.

169. The County did not institute condemnation proceedings before taking or damaging Davidson's property interests.

170. The County did not pay or offer Davidson just compensation for the taking or damaging of Davidson's property interests.

171. The County's conduct constituted a taking and/or damaging of Davidson's private property rights for public use or alleged public use without just compensation in violation of Article I, § 26 of the Missouri Constitution and Davidson is entitled to just compensation and damages under Article I, § 26 of the Missouri Constitution.

172. As a direct and proximate result of the County's taking and/or damaging of Davidson's property interests, Davidson sustained damages, including loss of use, loss of access, diminution in value, damage to the Lot's utility and economic viability, loss of business value to the extent recoverable as part of just compensation, and other damages in an amount to be proven at trial.

WHEREFORE, Davidson prays that the Court enter its order and judgment on Count V in favor of Davidson and against County, awarding Davidson just compensation, compensatory damages, damages for loss of use, loss of access, diminution in value, damage to the Lot's utility and economic viability, loss of business value to the extent recoverable as part of just compensation, pre-judgment and post-judgment interest where allowed by law, costs, and such other and further relief as the Court deems just and proper, all in an amount to be proven at trial.

## COUNT VI
## TORTIOUS INTERFERENCE WITH CONTRACT AND/OR BUSINESS EXPECTANCY

COMES NOW Plaintiff, by and through counsel, and for Count VI of the Complaint against Commissioners in their individual capacities only states to the Court as follows:

173. Davidson realleges and incorporates all paragraphs and averments in this Complaint as if fully set forth herein.

174. At all relevant times, Davidson had a valid contract, business relationship, and/or business expectancy relating to the parking and storage of GM related vehicles at the Lot.

175. Davidson's contract, business relationship, and/or business expectancy included, but was not limited to, rights and business operations arising from its Carrier agreement concerning vehicle parking at the Lot.

176. Davidson's contract, business relationship, and/or business expectancy also included the continuing course of dealing involving Davidson, GM related vehicles, Carriers,

their assignees, agents, drivers, and/or vehicle carriers using the Lot for vehicle parking and storage.

177. Davidson's business expectancy was valid, reasonable, concrete, and not speculative because Davidson had an existing course of business, actual vehicle parking and storage operations, operational readiness, substantial investment in the Lot, a developed parking facility, carrier access arrangements, and ongoing GM related vehicle parking and storage activity.

178. The individual Commissioners knew of Davidson's contract, business relationship, and/or business expectancy.

179. The individual Commissioners knew or reasonably should have known that Davidson's business depended upon vehicle carriers accessing the Lot by traveling over Linn's Mill Road between the Trackside Farm Road intersection and the Fieth Road intersection.

180. The individual Commissioners knew or reasonably should have known that if vehicle carriers could not access the Lot, Davidson's GM related vehicle parking and storage business would be terminated, withdrawn, discontinued, or materially impaired.

181. The individual Commissioners intentionally interfered with Davidson's contract, business relationship, and/or business expectancy through non-legislative, administrative, executive, enforcement related, coercive, and/or extra legislative conduct.

182. The individual Commissioners' intentional interference included, but was not limited to, demanding that Davidson fund or contribute to public road repairs, maintenance, modifications, or road straightening work, pressuring Davidson to pay public road costs, causing, directing, supporting, implementing, threatening, and/or maintaining a 28 ton restriction that extended south of Trackside Farm Road to Fieth Road, and/or using County authority to prevent vehicle carriers from accessing the Lot.

183. Davidson's individual capacity tortious interference claim is not based merely on the Commissioners' legislative vote for the Ordinance.

184. The individual Commissioners were not parties to Davidson's contract, business relationship, and/or business expectancy with Carriers, or GM related vehicle parking operations.

185. The individual Commissioners had no lawful right, privilege, or justification to intentionally interfere with Davidson's contract, business relationship, and/or business expectancy for the purpose of punishing, coercing, or retaliating against Davidson for refusing to cooperate or fund public road repairs, maintenance, modifications, or road straightening work.

186. The individual Commissioners acted without justification because their conduct was not a neutral, lawful, engineering based exercise of governmental authority and was not reasonably related to the stated repair, maintenance, infrastructure, curve or related safety concerns located north of the Trackside Farm Road intersection.

187. The individual Commissioners acted with improper means and improper purpose by using public authority, threatened enforcement, and the overbroad Trackside Farm Road to Fieth Road extension of the 28 ton restriction to eliminate carrier access to the Lot and interfere with Davidson's GM related vehicle parking and storage business.

188. The individual Commissioners acted in bad faith, with malice, and/or with the purpose of punishing Davidson after Davidson refused to cooperate or pay public road repair, maintenance, modification, or road straightening costs.

189. But for the individual Commissioners' conduct, Davidson's contract, business relationship, and/or business expectancy would have continued.

190. But for the inclusion of the Linn's Mill Road segment between the Trackside Farm Road intersection and the Fieth Road intersection within the 28 ton restriction, vehicle carriers could have continued accessing the Lot, and Davidson's GM related vehicle parking and

storage business would not have been suspended, terminated, withdrawn, discontinued, or materially impaired.

191. As a direct and proximate result of the individual Commissioners' conduct, Davidson's GM related vehicle parking and storage business at the Lot was terminated, withdrawn, discontinued, and/or materially impaired.

192. As a direct and proximate result of the individual Commissioners' conduct, Davidson sustained damages, including lost revenue, lost profits, loss of goodwill, loss of business reputation, loss of business relationships, loss of business opportunities, loss of business value, and other damages in an amount to be proven at trial.

WHEREFORE, Davidson prays that the Court enter its order and judgment on Count VI in favor of Davidson and against the individual capacity Commissioners, jointly and severally where permitted by law, awarding Davidson compensatory damages, consequential damages, lost profits, loss of business value, loss of goodwill, loss of business opportunities, punitive damages to the extent permitted by law, pre-judgment and post-judgment interest where allowed by law, costs, and such other and further relief as the Court deems just and proper, all in an amount to be proven at trial.

## COUNT VII
## CIVIL CONSPIRACY

COMES NOW Plaintiff, by and through counsel, and for Count VII of the Complaint against Commissioners in their individual capacities only states to the Court as follows:

193. Davidson realleges and incorporates all paragraphs and averments in this Complaint as if fully set forth herein.

194. At all relevant times, Commissioners were separate persons capable of acting together for purposes of civil conspiracy liability.

195. The individual Commissioners acted together, agreed, understood, combined, cooperated, and had a meeting of the minds to accomplish an unlawful objective or to accomplish a lawful objective by unlawful means.

196. The individual Commissioners acted in their individual capacities, for improper purposes, and outside the scope of any legitimate public function to the extent they used non-legislative, administrative, executive, enforcement related, coercive, and/or extra legislative conduct to interfere with Davidson's contract and/or business expectancy.

197. The object of the conspiracy was to stop vehicle carriers from accessing the Lot, interfere with Davidson's vehicle parking and storage business, interfere with Davidson's contract and/or business expectancy involving GM related vehicles, Carriers, their assignees, agents, and/or vehicle carriers, punish Davidson for refusing to cooperate and pay public road costs, and shut down or materially impair Davidson's vehicle parking and storage business.

198. The individual Commissioners' agreement, understanding, combination, cooperation, and meeting of the minds may be inferred from their coordinated conduct, including their communications, demands, discussions, decisions, directives, and actions concerning Davidson, Linn's Mill Road, the requested public road payments, the 28 ton restriction, the Trackside Farm Road to Feith Road segment, and the effect of the restriction on carrier access to the Lot.

199. The individual Commissioners acted by unlawful means, including tortious interference with Davidson's contract and/or business expectancy, arbitrary and pretextual government action, targeted differential treatment of Davidson, and non-legislative acts intended to eliminate carrier access to the Lot.

200. The underlying wrongful act supporting this civil conspiracy claim includes, but is not limited to, the tortious interference alleged in Count VI.

201. In furtherance of the conspiracy, one or more of the individual Commissioners committed overt acts, including non-legislative, administrative, executive, enforcement related, coercive, and/or extra legislative acts.

202. Those overt acts included, but were not limited to, demanding payment from Davidson, pressuring Davidson to fund or contribute to public road repairs, maintenance, modifications, or road straightening work, selecting or directing the overbroad geographic scope of the restriction, causing or directing the 28 ton restriction to include the Trackside Farm Road to Feith Road segment, causing or directing the weight limit sign to be posted and maintained, causing or directing threatened enforcement, communicating or causing communications with vehicle carriers, GM related representatives, Carrier related representatives, or other third parties, and using County authority to cause vehicle carriers and GM related vehicle traffic to stop accessing the Lot.

203. The individual Commissioners' civil conspiracy liability is not based merely on their legislative vote for the Ordinance. Davidson's civil conspiracy claim is based on non-legislative, administrative, executive, enforcement related, coercive, and/or extra legislative conduct undertaken in furtherance of the conspiracy and in furtherance of the underlying tortious interference.

204. The individual Commissioners acted with improper purpose, bad faith, malice, and/or a purpose to punish or coerce Davidson after Davidson refused to cooperate or pay public road repair, maintenance, modification, or road straightening costs.

205. But for the individual Commissioners' conspiracy and acts in furtherance thereof, Davidson's contract and/or business expectancy involving GM related vehicle parking and storage operations at the Lot would have continued.

206. But for the inclusion of the Linn's Mill Road segment between the Trackside Farm Road intersection and the Feith Road intersection within the 28 ton restriction, vehicle

carriers could have continued accessing the Lot and Davidson's GM related vehicle parking and storage business would not have been suspended, terminated, withdrawn, discontinued, or materially impaired.

207. As a direct and proximate result of the individual Commissioners' conspiracy and acts in furtherance thereof, Davidson's vehicle parking and storage business was terminated, withdrawn, discontinued, or materially impaired.

208. As a direct and proximate result of the individual Commissioners' conspiracy and acts in furtherance thereof, Davidson sustained damages, including lost revenue, lost profits, loss of goodwill, loss of business reputation, loss of business relationships, loss of business opportunities, loss of business value, and other damages in an amount to be proven at trial.

WHEREFORE, Davidson prays that the Court enter its order and judgment on Count VII in favor of Davidson and against the individual capacity Defendants, jointly and severally where permitted by law, awarding Davidson compensatory damages, consequential damages, lost profits, loss of business value, loss of goodwill, loss of business opportunities, punitive damages to the extent permitted by law, pre-judgment and post-judgment interest where allowed by law, costs, and such other and further relief as the Court deems just and proper, all in an amount to be proven at trial.

**ADDITIONAL AVERMENTS APPLICABLE TO RELIEF**

209. Davidson pleads its claims and requests for relief in the alternative and cumulatively to the fullest extent permitted by Federal Rules of Civil Procedure 8(a), 8(d), and 54(c). Nothing stated in any Count or prayer for relief shall be construed as an election of remedies, waiver of any claim, limitation of damages, or abandonment of any other relief available under federal or Missouri law.

210. Davidson seeks attorney's fees and costs under 42 U.S.C. § 1988 on its federal constitutional claims brought under 42 U.S.C. § 1983 and seeks attorney's fees, costs, interest, and expenses on its remaining claims only to the extent permitted by applicable law.

211. Davidson demands a trial by jury on all claims, issues, and damages so triable.

WHEREFORE, Davidson requests that the Court enter judgment in Davidson's favor and against Defendants as follows:

A. Awarding Davidson compensatory damages in an amount to be proven at trial;

B. Awarding Davidson just compensation for the taking or damaging of Davidson's property rights in an amount to be proven at trial;

C. Awarding Davidson nominal damages on Davidson's constitutional claims where allowed by law;

D. Awarding punitive damages against the individual capacity Defendants only, and not against County or any official capacity Defendant, to the extent permitted by law;

E. Awarding Davidson its reasonable attorney's fees and costs under 42 U.S.C. § 1988 and any other applicable law;

F. Awarding pre-judgment and post-judgment interest where allowed by law; and

G. Granting such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED ON ALL COUNTS TRIABLE BY JURY**

**SPOONER LAW, LLC**

By: */s/ Jack B. Spooner*

Jack B. Spooner (MO #38382)
34 North Brentwood, Suite 210
St. Louis, Missouri 63105
Telephone: (314) 725-4300
Facsimile: (314) 725-4301
Email: jbs@spoonerlawllc.com
***Attorneys for Plaintiff***